OPINION. Rice, Judge: Section 117 (g) (l)[1] provides that gains or losses from short sales of property shall be considered as gains or losses from the sales or exchanges of capital assets. Treasury Regulations 111, section 29.117-6,[2] provide that, for income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover such short sale has been made, and that the holding period, for purposes of determining whether the gain thereon is taxable as a long- or short-term gain, shall be the time the property delivered to cover such short sale was held. Petitioner does not question the validity of the foregoing regulation, but argues that it is inapplicable here, because he did not complete the short sales which he entered into in July and August 1949. He argues that when he made such short sales he acquired specific contract rights which, in and of themselves, constituted capital assets; and, that rather than fulfill his obligation by making delivery on the short sales, he sold his contract rights, which he had held for more than 6 months prior to their sale. The respondent, on the other hand, argues that the petitioner did not sell any contracts to Loeb, Rhoades in February and March 1950, but, for all practical purposes, covered the short sales by having Loeb, Rhoades purchase English pounds sterling from the Chemical Bank on February 24 and. March 28,1950; that those pounds were delivered in London by cable transfer on the delivery dates specified in the short sales contracts — February 28 and March 31, 1950; and that, therefore, the holding period of the property so delivered was less than 6 months, and that the gains which petitioner realized were, therefore, short-term capital gains. Testimony at the hearing indicated that petitioner told the representatives of Loeb, Rhoades at the time the contracts were supposedly purchased by it from him that he desired to realize long-term capital gains on the profits arising from the short sales. Petitioner, of course, had every right to conduct his transactions in foreign exchange in any legitimate manner by which he could realize the maximum tax benefit, and for that he is not to be penalized. Commissioner v. Tower, 327 U. S. 280 (1946); Gregory v. Helvering, 293 U. S. 465 (1935) ; and Jack Benny, 25 T. C. 197 (1955), appeal dismissed (C. A. 9). But, we agree with the respondent here that the so-called purchase of short sales contracts by Loeb, Rhoades was nothing more than a cloak to disguise covering purchase transactions by petitioner, and that such contract purchases by Loeb, Rhoades, therefore, were not realistic purchases for income tax purposes. Except for the book entries which Loeb, Rhoades made to the effect that it had purchased petitioner’s short sales contracts and a similar reference in the letters written to him on February 24 and March 28,1950, the short sales were closed out in exactly the same manner as if petitioner, himself,, had directed Loeb, Rhoades, as his brokerage agent, to purchase English pounds sterling to cover the contracts. We think that is what, in fact, happened. The significant fact, which persuades us that the contract purchase transactions were not what petitioner contends, is that petitioner remained fully liable as the short seller until the sales were finally consummated and closed out by delivery of English pounds sterling to the purchasers. That liability is clearly evidenced by the letters which Loeb, Rhoades wrote to petitioner on February 24 and March 28,1950. Loeb, Rhoades made no profit on the purchase of petitioner’s contracts, and it likewise could not have sustained one penny of loss because the risk remained petitioner’s until the sales were consummated. A representative of Loeb, Rhoades testified that it was willing to purchase petitioner’s contracts at no profit to itself because petitioner’s firm was a large customer and Loeb, Rhoades would thereby incur goodwill by so accommodating him. Be that as it may, no explanation was offered to show why petitioner was required to carry the full and complete risk on the transactions, just as he would have done had Loeb, Rhoades acted only as his agent rather than as the alleged “purchaser” of his contracts. We, therefore, conclude, on the record before us, that the so-called purchase of contracts was merely an attempt to disguise the normal consummation of the short sales into which petitioner entered in 1949, and that the holding period of the pounds sterling with which such sales were closed out was less than the 6-month period required by the statute. Petitioner’s gains on the transactions were, therefore, short-term capital gains. Decision will be entered for the resfondent. SEC. 117. CAPITAL GAINS AND LOSSES. (g) Gains and Losses Prom Short Sales, Etc. — For the purpose of this chapter— (1) gatos or losses from short sales of property shall be considered as gains or losses from sales or exchanges of capital assets ; * * * Regulations 111. Sec. 29.117-6. Gains and Losses From Short Sales. — For Income tax purposes, a short sale Is not deemed to be consummated until delivery of property to cover the short sale, and the percentage of the recognized gain or loss to be taken Into account under section 117 (b) from a short sale shall be computed according to the period for which the property so delivered was held. Thus, If a taxpayer made a short sale of shares of stock and covered the short sale by purchasing and delivering shares which he held for not more than six months, 100 percent of the recognized gain or loss would be taken into account under section 117 (b), even though he had on hand other shares of the same stock which he held for more than six months. If the short sale is made through a broker and the broker borrows property to make delivery, the short sale is not deemed to be consummated until the obligation of the seller created by the short sale is finally discharged by delivery of property to the broker to replace the property borrowed by the broker.